# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MDB, A MINOR, BY MICHAEL J. BRIDGE, HIS GUARDIAN AND MICHAEL J. BRIDGE,

        Plaintiffs,

vs.

PURCHASE LINE SCHOOL DISTRICT, PUNXSUTAWNEY CHRISTIAN SCHOOL, AND TRI-COUNTY TRANSPORTATION, INC.

        Defendants.

CIVIL DIVISION

CASE NO. 2:18-CV-01079

## AMENDED COMPLAINT AND JURY DEMAND

A.    *Preliminary Statement*

1.    Plaintiff, MDB, (hereinafter "Student"), by and through his parent and natural guardian, Michael J. Bridge, brings this action under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; 42 U.S.C. § 1983; statutory, state common law, and other nonfederal claims, to redress violations of his right to be free from sexual harassment, sexual assault and a hostile educational environment in his education. A jury trial is demanded.

B.    *Jurisdiction and Venue*

2.    This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over civil actions arising under the Constitution, laws and treaties of the United States.

3. Additionally, this Court has supplemental jurisdiction over any statutory, state common law, or other nonfederal claims under 28 U.S.C. § 1367 because those claims arise out of the same operative facts as Plaintiffs' claims under Title IX, 42 U.S.C. § 1681, and 42 U.S.C. § 1983, and "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all defendants reside in this district and the events giving rise to the claims occurred in this district.


C. *Parties*

5. MDB is an eleven year old sexual assault survivor. At all relevant times, Student resided with his parents in Indiana County, Pennsylvania 15742. Student was previously a student at Punxsutawney Christian School. Student was nine years old at the time of the sexual assault detailed herein.

6. Plaintiff, Michael J. Bridge, (hereinafter "Parent") is the natural father and guardian of MDB, a minor child and is an adult individual residing in Indiana County, Pennsylvania 15742.

7. At all relevant times, Parent, was and is the guardian and natural father of Student and has the authority to bring this action on Student's behalf.

8. Defendant, Purchase Line School District (hereinafter "Purchase Line"), is a public school district, operating and organized at all times pertinent hereto under color of state law of the Commonwealth of Pennsylvania. Purchase Line has an address at 16559 Rt. 286 Hwy. E., Commodore, Pennsylvania 15729. Purchase Line receives federal funds for the operation of its schools.

9. At all relevant times, Purchase Line was acting by and through its duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with Purchase Line's policies, customs or practices.

10. At all relevant times, Purchase Line had the duty and authority to implement and execute all federal, state, and school district regulations and/or policies, including but not limited to those relevant to the operation of a public school.

11. Purchase Line had the authority at all relevant times, to take preventative and/or corrective measures based upon the presence of sexual harassment, sexual assault, and/or a hostile education environment.

12. Defendant Punxsutawney Christian School (hereinafter "Punxsutawney") is nonprofit domestic entity organized and existing under the law of the Commonwealth of Pennsylvania with a principal place of business of 216 North Jefferson Street, Punxsutawney, Pennsylvania 15767. Upon information and belief, Punxsutawney receives federal funding and/or federal grants for the operation of its school.

13. At all relevant times, Punxsutawney was acting by and through its duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment, under the color of state law, and/or in accordance with Punxsutawney's policies, customs or practices.

14. Upon information and belief and at all relevant times, Punxsutawney had the duty and authority to implement and execute all federal, state, and school district regulations and/or policies, including but not limited to those relevant to the operation of a school.

15.     Defendant Tri-County Transportation, Inc. (hereinafter "Tri-County) is a Pennsylvania business corporation with a principal place of business at 406 Magnolia Street, Northern Cambria, Pennsylvania 15714.

16.     At all relevant times, Tri-County was acting by and through its duly authorized administrators, agents and/or employees, who at all relevant times were acting within the course and scope of their employment and/or in accordance with Tri-County's policies, customs or practices. Tri-County had the duty and authority to implement and execute all federal, state, and school district regulations and/or policies, including but not limited to those set forth by the Pennsylvania Vehicle Code; Purchase Line's policies, including but not limited to, harassment policies; and all other applicable regulations and guidelines of the Pennsylvania Department of transportation and the Pennsylvania Department of Education.

D.      *Factual History*

17.     At all relevant times, Student's home school district was Purchase Line. At all relevant times, Student was enrolled as a student and attended Punxsutawney for his educational programming.

18.     At all relevant times, Purchase Line, pursuant to its legal obligations under 24 P.S. § 13-1361, transported Student to and from Punxsutawney each school day. During transport to and from school, Purchase Line had care, custody, and control of Student. As the home and transporting school district, Purchase Line had a duty to provide and/or ensure the safety, well-being and general care of Student during transportation.

19.     At all relevant times, Purchase Line contracted with Tri-County to transport Student to and from Punxsutawney.

20.     At all relevant times and pursuant to a written contract, Defendants Purchase Line and Tri-County acted as authorized agents, servants, employees, subcontractors, and assignees of one another.

21.     Specifically, Student was transported on a van owned, operated, and/or controlled by Tri-County to and from Punxsutawney each school day.

22.     On or around May 2016, while riding the van, Student was sexually assaulted by another student, KR, who was two years older than Student.

23.     MDB reported that KR told him he could use KR's smart device if MDB touched KR. KR then "bopped" MDB in the penis and exposed himself to MDB.

24.     KR and Student previously knew each other, due to an incident approximately two years prior, wherein KR brought a knife to school and threatened MDB.

25.     Given the previous threat and sexual assault, MDB was in immediate danger of KR and it was no longer safe for MDB to be in close proximity with KR.

26.     On or about May 11, 2016, Student reported the sexual assault to Parent.

27.     On or about May 11, 2016, Parent reported the sexual assault of Student to Defendants Purchase Line and Punxsutawney.

28.     On or about May 12, 2016, Parent met with Lori Galbraith at Punxsutawney to discuss the incident, wherein Ms. Galbraith asked Parent if he wanted her to report the assault to the Pennsylvania ChildLine and Abuse Registry (hereinafter "ChildLine").  Parent, knowing that this was a crime, advised that he certainly wanted it reported. However, Parent later became aware that Ms. Galbraith had not reported the sexual assault of Student to ChildLine at this time.

29.     Thus, at this time, Defendants Purchase Line and Punxsutawney had actual and/or constructive notice of the sexual assault suffered by Student.

30.     Upon information and belief, KR was never disciplined by Punxsutawney for his criminal and unacceptable conduct.

31.     Further and much to Parent's surprise, KR continued to ride the Tri-County van to and from school.

32.     Parent made the decision to transport Student to and from school at this time due to their concerns for his safety on the van as none of the Defendants proposed a plan to ensure that no recurrence of sexual assault would occur.

33.     At a later meeting with Parent, on or about May 16, 2016, Ms. Galbraith spoke with Student directly. It was only at this time, and after four days, did Ms. Galbraith report the assault to ChildLine.

34.     Parent set up an appointment with Purchase Line's Superintendent, Joseph Bradley. Parent met with Mr. Bradley and explained the assault on Student. Mr. Bradley responded to Parent, "What do you want Purchase Line to do?" Despite knowledge of the assault, Mr. Bradley failed to take any action to report the sexual assault, nor any action to ensure the future safety of Student while riding the van to and from Punxsutawney.

35.     On or about May 20, 2016, Parent notified Tri-County about the sexual assault. Tri-County told Parent that it does what Purchase Line tells it to do and had no ability to take any independent action.

36.     On or about July 2016, Parent became aware that none of the Defendants reported the sexual assault to the police. Accordingly, Parent notified the police to make a report. Ultimately, KR was criminally charged with indecent assault and indecent exposure.

37.     During the police investigation, Parent attended school board meetings and had phone calls with administrators to try and address his safety concerns for Student.

38.     Due to safety concerns, as none of the Defendants had offered safety accommodations for Student, Parent was forced to drive Student to and from Punxsutawney for the remainder of the 2015-2016 school year.

39.     Throughout the remainder of the 2015-2016 school year, Student continued to encounter his abuser, KR, while at school. Punxsutawney failed to take any action to ensure Student's physical and emotional safety while he was on its premises, such as providing supervision to KR or MDB while in the hallways, cafeteria, gym, or other unstructured times.

40.     These continued interactions on Punxsutawney's premises caused Student to suffer intimidation, harassment, emotional distress, and physical manifestations of psychological anguish.

41.     Although Parent brought these issues to Punxsutawney's attention, no reasonable attempts were made to address the ongoing emotional distress and hostile environment Student was forced to endure.

42.     Rather than provide supervision or ensure that Student would not come into contact with KR, Punxsutawney allowed a hostile environment to continue, violating Student's right to access his education.

43.     Thus, Punxsutawney's failure to take protect Student on its premises was clearly unreasonable and was deliberately indifferent to Plaintiffs' complaints and requests to rectify the situation.

44.     Prior to the end of the 2015-2016 school year, Parent informed both Purchase Line and Punxsutawney that he wanted an aide placed on the van to supervise and ensure Student's safety, given that his sexual assailant was permitted to continue to ride the same van.

45.     On or about August 15, 2016, Parent was informed that Purchase Line would facilitate placing an aide on the bus, only if Punxsutawney paid for the aide.  In response, Punxsutawney informed Parent that it did not have the funds in its budget to pay for an aide.

46.     Instead, Punxsutawney merely offered to have Student and his sexual assailant sit apart from each other, with one sitting in the front of the van, and the other sitting in the back. Parent was told if this inappropriate recommendation was not acceptable to him, he could explore other educational options for Student.

47.     Additionally, Punxsutawney told Parent, via a letter, that beginning in the 2016-2017 school year, it did not want any further discussion of this matter with the Punxsutawney administration or staff.

48.     Forcing Student to continue to ride the van with his abuser would have put Student into a hostile environment and caused severe emotional distress. Thus, this option was not acceptable to Parent.

49.     As a result of Punxsutawney and Purchase Line's deliberate indifference to Student's exposure to a hostile environment and his resulting emotional distress, Parent had no other option other than to withdraw Student from Punxsutawney and enroll him in Northern Cambria Catholic School (hereinafter "Northern Cambria") for the 2016-2017 school year.

50.     When initially choosing a private school for Student, Parent specifically did not choose Northern Cambria due to the need for Student to switch schools for high school and because the associated high school with Northern Cambria is outside of the ten-mile radius for Purchase Line to provide transportation. In other words, Parent will now be responsible for finding transportation for Student when he attends ninth through twelfth grade.

51.     Due to Defendant Purchase Line's conduct and violations of the law, Parent filed a complaint with the Office of Civil Rights (hereinafter "OCR"), alleging, *inter alia*, that Defendants violated Student's rights under Title IX.

52.     Neither Purchase Line nor Punxsutawney complied with their obligations under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (hereinafter "Title IX") by, *inter alia,* referring Plaintiffs to a Title IX coordinator; initiating an investigation; and/or maintaining policies and procedures for Title IX violations.

53.     As a result of Parent's complaint, OCR initiated an investigation into Purchase Line.

54.     On July 26, 2018, OCR issued a final resolution of Parent's complaint filed against Purchase Line School District.

55.     Through its investigation, OCR determined that Purchase Line did not provide a prompt and equitable response to the report that Student was sexually harassed; that Purchase Line's Title IX grievance procedures are not widely published; and the Title IX Coordinator was not adequately trained in the District's procedures and how to respond to the report of sexual harassment, including maintaining adequate records of the District's response.

56.     Due to OCR's findings of noncompliance, Purchase Line entered into a resolution agreement (herein "The Agreement") to remedy the aforementioned violations under Title IX.

57.     Student has suffered anxiety, depression, emotional distress, and physical manifestations of psychological anguish. Despite being a victim of sexual assault, Student was forced to leave his friends and school, effectively being punished and victimized a second time, all due to no fault of his own, and in direct violation of federal law.

58.     Even though Purchase Line and Punxsutawney knew or should have known of their obligations under Title IX they had no policies or procedures in place to address Parent's legitimate concerns and Student's concerns and needs.

59.     Further, to the extent Purchase Line and/or Punxsutawney maintains it did have such policies and procedures in place, it failed to follow them.

60.     As a direct and proximate result of the previously described conduct of all Defendants, Student sustained the following injuries:

a)   Nervousness;

b)   Emotional tension;

c)   Anxiety;

d)   Depression;

e)   Physical manifestations of psychological anguish, including migraines, nausea, vomiting, and panic attacks; and

f)   Other injuries to be proven at trial.

61.     As a direct and proximate result of the negligence, carelessness, and recklessness of Defendants, Student has suffered the following damages, some or all of which are or may be permanent in nature:

a)   Great pain, suffering, inconvenience, embarrassment, mental anguish, and emotional and psychological trauma;

b)   Student will be required to expend large sums of money for medical treatment and care, psychological treatment and counseling, hospitalization, medical supplies, rehabilitation and therapeutic treatment, medicines, and other attendant services;

c)   Inability to enjoy various pleasure of life that were previously enjoyed; and

d)   Loss and impairment of general health, strength, and vitality.

62.     As a direct and proximate result of the previously described conduct of all Defendants, Parent sustained the following injuries:

a) Nervousness;

b) Emotional tension;

c) Anxiety;

d) Depression;

e) Physical manifestations of psychological anguish; and

f) Other injuries to be proven at trial.

63. As a direct and proximate result of the negligence, carelessness, and recklessness of Defendants, Parent has suffered the following damages, some or all of which are or may be permanent in nature:

a) Great pain, suffering, inconvenience, embarrassment, mental anguish, and emotional and psychological trauma;

b) Parent will be required to expend large sums of money for medical treatment and care, psychological treatment and counseling, hospitalization, medical supplies, rehabilitation and therapeutic treatment, medicines, and other attendant services for both himself and for Student;

c) Parent will be required to expend large sums of money for transportation for Student's continued schooling;

d) Inability to enjoy various pleasure of life that were previously enjoyed;

e) Impairment of Parent's relationship with Student due to Student's anxiety, depression, and psychological trauma; and

f) Loss and impairment of general health, strength, and vitality.

**FIRST CAUSE OF ACTION**
**Violation of Title IX, 20 U.S.C. § 1681**
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge**
**v. Defendant Purchase Line School District**

64. All preceding paragraphs of this Complaint are incorporated herein.

65. KR's sexual harassment and assault of Student created a hostile environment, as the conduct was sufficiently serious and interfered with and/or limited Student's ability to participate in or benefit from his educational program.

66.     Purchase Line's transportation policy, including its rules and disciplinary procedures, applied to all students for whom Purchase Line provided transportation.

67.     At all relevant times, Purchase Line was responsible for ensuring that Student was not subjected to discrimination based on sex while he was transported. Student was participating in a Purchase Line program or activity at the time of the assault because Purchase Line provided transportation to him, in accordance with state law.

68.     Once Purchase Line knew or reasonably should have known about the sexual harassment and assault, it failed to respond in a prompt and equitable manner by taking immediate action to eliminate the harassment, prevent its recurrence, and address its effects, as required under Title IX.

69.     Purchase Line's delay in responding to Student's allegations of sexual harassment and assault subjected MDB to a hostile environment.

70.     Defendant Purchase Line created and/or permitted sexual harassment and a hostile education environment to continue in violation of Title IX. Due to Purchase Line's actions and/or inactions, Student was subjected to a sexual assault and, after the assault, to an ongoing hostile education environment which caused emotional distress.

71.     After Student's sexual assault, Purchase Line had the duty, authority, and ability to take corrective measures, by *inter alia*, removing KR from the van; providing alternative transportation for Student; and/or placing an aide on the van to supervise and protect Student. However, Purchase Line failed to take any corrective action despite having actual notice of the hostile environment and were deliberately indifferent. In fact, Purchase Line continued to place Student in ongoing risk of harm by requiring that he continue to ride the van with his assailant if

he wanted to continue to receive the transportation to school that he was entitled to under Pennsylvania law.

72.     Purchase Line failed to provide Parent with its Title IX grievance procedures or reporting form, which were not otherwise readily available to Parent, as required under Title IX.

73.     Purchase Line failed to adequately record and/or conduct an adequate investigation of the incident as it failed to interview either student or make a determination as to whether the alleged conduct occurred and what remedies, if any, were needed to address the effects of the harassment and to prevent its recurrence, as required under Title IX.

74.     Purchase Line failed to contact CYS or the local police regarding the status of their respective investigations and did not at any point, complete its own investigation as required under Title IX.

75.     Purchase Line failed to adopt, publish, establish, maintain, distribute and/or enforce any written, or otherwise, policies or procedures for resolving complaints of sex discrimination, including but not limited to sexual violence, in violation of its required duties under Title IX.

76.     Purchase Line failed to designate, train, and/or provide authority to at least one employee as a "Title IX coordinator" to comply with and carry out their responsibilities under Title IX.  In the event, Purchase Line did have a designated Title IX coordinator, Purchase Line failed to provide Plaintiffs with information on how to contact him or her, in violation of its required duties under Title IX.

77.      Purchase Line failed to adopt and/or publish grievance procedures for sexual assault or harassment allegations, including but not limiting to explaining where and to whom students should go if they are victims of sexual assault or harassment; information on how to file complaints; information about counseling and other victim support services available; information

on how Purchase Line will respond to allegations of sexual assault, including any interim measures it may take; prohibiting retaliation against complainants and anyone participating in an investigation; resolution procedures; information about the investigation process; time frame for major stages of the investigation process; and filing appeals of any investigation findings.

78. Student has suffered physical and psychological trauma, physical manifestations of said trauma, anxiety, depression, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Purchase Line's violation of his rights under Title IX.

79. Parent has also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Purchase Line together with court costs, attorney's fees, interest and all other relief permitted by the Court.

## SECOND CAUSE OF ACTION
### Violation of Title IX, 20 U.S.C. § 1681
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge
v. Defendant Punxsutawney Christian School**

80. All preceding paragraphs of this Complaint are incorporated herein.

81. KR'S sexual harassment and assault of Student created a hostile environment, as the conduct was sufficiently serious and interfered with and/or limited Student's ability to participate in or benefit from Punxsutawney's educational program.

82. Once Punxsutawney knew or reasonably should have known about the sexual harassment and assault, it failed to respond in a prompt and equitable manner by taking immediate action to eliminate the harassment, prevent its recurrence, and address its effects, as required under Title IX.

83. Punxsutawney's delay in responding to Student's allegations of sexual harassment and assault subjected MDB to a hostile environment.

84. Moreover, Punxsutawney's suggestion to Parent to look into alternative education options and to not discuss this matter further clearly demonstrate Punxsutawney's deliberate indifference to the hostile environment suffered by Student.

85. Defendant Punxsutawney created and/or permitted sexual harassment and a hostile education environment to continue in violation of Title IX. Due to Punxsutawney's actions and/or inactions, Student was subjected to a sexual assault and afterward the assault, to an ongoing hostile education environment which caused emotional distress.

86. Prior to MDB's sexual assault, Defendant Punxsutawney had actual or constructive knowledge of a prior incident between Student and KR, wherein KR threatened to hurt Student with a knife he brought to school.

87. As a result of this threat, Defendant Punxsutawney knew or should have known that KR posed an imminent danger to Student and should have ensured that MDB was protected.

88. After Student's sexual assault, Punxsutawney had the duty, authority, and ability to take corrective measures, by *inter alia*, removing KR from its school; creating a safety plan to ensure that Student would not have to encounter KR in any capacity throughout the school day; implementing a "no contact" order against KR; removing KR from the van; providing alternative transportation for Student; and/or placing an aide on the van to supervise and protect Student. However, Punxsutawney failed to take any corrective action despite having actual notice of the hostile environment and were deliberately indifferent. In fact, Punxsutawney continued to subject student to harassment and intimidation and placed Student in ongoing risk of harm by requiring that he continue to attend school and ride the van with his assailant.

89.     Punxsutawney failed to adopt, publish, establish, maintain, distribute and/or enforce any written, or otherwise, policies or procedures for resolving complaints of sex discrimination, including but not limited to sexual violence, in violation of its required duties under Title IX.

90.     Punxsutawney failed to designate, train, and provide authority to at least one employee as a "Title IX coordinator" to comply with and carry out their responsibilities under Title IX. In the event Punxsutawney did have a designated Title IX coordinator, Punxsutawney failed to provide Plaintiffs with information on how to contact him or her, in violation of its required duties under Title IX.

91.     Punxsutawney failed to adopt and/or publish grievance procedures for sexual assault or harassment allegations, including but not limiting to explaining where and to whom students should go if they are victims of sexual assault or harassment; information on how to file complaints; information about counseling and other victim support services available; information on how Punxsutawney will respond to allegations of sexual assault, including any interim measures it may take; prohibiting retaliation against complainants and anyone participating in an investigation; resolution procedures; information about the investigation process; time frame for major stages of the investigation process; and filing appeals of any investigation findings.

92.     Punxsutawney failed to implement specific and continuing steps to notify all applicants for admission and employment, students and parents, employees, sources of referral of applicants for admission and employment, and all unions or professional organizations holding collective bargaining or professional agreements with the recipient that it does not discriminate on the basis of sex in its education programs or activities, and that it is required by Title IX not to discriminate in such a manner.

93. Student has suffered physical and psychological trauma, physical manifestations of said trauma, anxiety, depression, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Punxsutawney's violation of his rights under Title IX.

94. Parent has also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Punxsutawney together with court costs, attorney's fees, interest and all other relief permitted by the Court.

**THIRD CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983**
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v.**
**Defendant Purchase Line School District**
**(For Injury to Bodily Integrity as a Result of State Created Harm)**

95. All preceding paragraphs of this Complaint are incorporated herein.

96. Under the Fourteenth Amendment, Student had the right to personal security, bodily integrity and Equal Protection under the law.

97. At all relevant times, Defendant Purchase Line was a state actor acting under the color of the law.

98. Purchase Line's actions and omissions detailed above violated Student's rights under the United States Constitution.

99. More specifically, at all relevant times, Student possessed both substantive and procedural rights, including, but not limited to, a liberty interest in his bodily integrity.

100. At all relevant times, Purchase Line was responsible for ensuring that Student was not subjected to discrimination based on sex while he was transported. Student was participating

in a Purchase Line program or activity at the time of the assault because Purchase Line provided transportation to him, in accordance with state law.

101.    It was not objectively reasonable for Purchase Line to place Student in a dangerous situation, i.e. riding the van with his assailant, where it was reasonably foreseeable and direct he could be assaulted again, and when Purchase Line knew or should have known that by doing so, Student would be placed in a dangerous situation.

102.    Despite its authority and ability to act, Purchase Line ignored Student's safety, and instead told Parent that it was Defendant Punxsutawney's responsibility to act.

103.    Thus, Purchase Line's clearly demonstrate an adopted practice, custom or policy of being deliberately indifferent to the health, safety and welfare of students that it transported that were not enrolled at its District.

104.    Purchase Line knew of Student's sexual assault and continued to place him in harm's way by allowing the sexual assailant to continue to ride the van and by choosing not to place an aide onto the van. Instead, Purchase Line's actions and attempts to shift responsibility to Punxsutawney ensured that Student would endure an ongoing hostile environment in the form of daily encounters with his sexual abuser on the van. Purchase Line knew that Student faced a substantial risk of harm and failed to take reasonable steps to avoid it.

105.    Such action and/or inaction exhibited by Purchase Line would shock the conscience of a reasonable person under similar circumstances.

106.    Student was an obvious member of a class subjected to the harm brought about by Purchase Line's actions and/or inactions.

107.     By way of Purchase Line's actions and/or inactions, Purchase Line utilized its position of authority to create a danger to Student and/or placed Student in a more vulnerable manner to the known risk of harm.

108.     Student has suffered physical and psychological trauma, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Purchase Line's violation of his rights under the Fourteenth Amendment.

109.     Parent has also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Purchase Line together with court costs, attorney's fees, interest and all other relief permitted by the Court.


### FOURTH CAUSE OF ACTION
### Violation of 42 U.S.C. § 1983
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v. Defendant Punxsutawney Christian School**
**(For Injury to Bodily Integrity as a Result of State Created Harm)**

110.     All preceding paragraphs of this Complaint are incorporated herein.

111.     Under the Fourteenth Amendment, Student had the right to personal security, bodily integrity and Equal Protection under the law.

112.     Upon information and belief and at all relevant times, Defendant Punxsutawney was a state actor acting under the color of the law.

113.     Punxsutawney's actions and omissions detailed above violated Student's rights under the United States Constitution.

114.    More specifically, at all relevant times, Student possessed both substantive and procedural rights, including, but not limited to, a liberty interest in his bodily integrity.

115.    Punxsutawney allowed Student to continue to be transported with KR, without supervision, after KR threatened Student with a weapon while at school. Punxsutawney knew or should have known that KR posed a threat to Student's safety and nonetheless, took no action to ensure Student's safety.

116.    Thus, it was foreseeable and fairly direct that KR posed a threat to Student's safety.

117.    It was not objectively reasonable for Punxsutawney to place Student in a dangerous situation, i.e. riding the van and attending school with his assailant, where it was reasonably foreseeable and direct he could be assaulted and/or victimized again, and when Punxsutawney knew or should have known that by doing so, Student would be placed in a dangerous situation.

118.    Punxsutawney's actions and/or inactions demonstrated an adopted practice, custom or policy of deliberate indifference to Student's overall health, safety, and welfare.

119.    Punxsutawney knew of Student's sexual assault and continued to place him in harm's way by allowing the sexual assailant to continue attend its school, frequently coming into contact with Student; continue to ride the van; and refusing to place an aide onto the van. Instead, Punxsutawney's actions and attempts to shift responsibility to Purchase Line ensured that Student would endure an ongoing hostile environment in the form of daily encounters with his sexual abuser both in school and on the van. Punxsutawney knew that Student faced a substantial risk of harm and failed to take reasonable steps to avoid it.

120.    Such action and/or inaction exhibited by Punxsutawney would shock the conscience of a reasonable person under similar circumstances.

121.     Student was an obvious member of a class subjected to the harm brought about by Punxsutawney's actions and/or inactions.

122.     By way of Punxsutawney's actions and/or inactions, Punxsutawney utilized its position of authority to create a danger to Student and/or placed Student in a more vulnerable manner to the known risk of harm.

123.     Student has suffered physical and psychological trauma, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Punxsutawney's violation of his rights under the Fourteenth Amendment.

124.     Parent has also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Punxsutawney together with court costs, attorney's fees, interest and all other relief permitted by the Court.


# FIFTH CAUSE OF ACTION
## Violation of 42 U.S.C. § 1983
### Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v. Defendant Purchase Line School District
### (*Monell* Liability For Failure to Train and Supervise)

125.  All preceding paragraphs of this complaint are incorporated herein.

126.     Under the Fourteenth Amendment, Student had the right to personal security, bodily integrity and Equal Protection under the Law.

127.     Defendant Purchase Line and its agents, servants, employees, subcontractors, and/or administrators failed to preserve Student's rights under the United States Constitution.

128.     Purchase Line knew or should have known that a constitutional violation could occur as a result of its action and/or inaction described above.

129.     Upon information and belief, Purchase Line has committed a pattern of violations which have resulted in the deprivation of other students' rights to personal security, bodily integrity, and Equal Protection.

130.     Purchase Line's actions in ignoring its duties under federal law, including but not limited to, Title IX, demonstrate an adopted practice, custom, or policy in deliberate indifference to Student's safety.

131.     Purchase Line's failure to adequately train its employees in the proper reporting and investigative procedures of a sexual harassment or assault complaint, resulted in Student being forced with withdraw and switch school districts, thereby forcing him to choose between his safety or accessing his educational program to which he was entitled to receive.

132.     Student has suffered physical and psychological trauma, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Purchase Line's violation of his rights under the Fourteenth Amendment.

133.     Parent has also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Purchase Line together with court costs, attorney's fees, interest and all other relief permitted by the Court.

**SIXTH CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983**
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v.**
**Defendant Punxsutawney Christian School**
**(*Monell* Liability For Failure to Train and Supervise)**

134.    All preceding paragraphs of this complaint are incorporated herein.

135.    Under the Fourteenth Amendment, Student had the right to personal security, bodily integrity and Equal Protection under the Law.

136.    Defendant Punxsutawney and its agents, servants, employees, subcontractors, and/or administrators failed to preserve Student's rights under the United States Constitution.

137.    Punxsutawney knew or should have known that a constitutional violation could occur as a result of its action and/or inaction described above.

138.    Punxsutawney violated Student's constitutional right to bodily integrity by failing to properly train and supervise its agents, servants, employees, subcontractors, and/or administrators as to the risk associated with their actions and/or inactions described above.

139.    Upon information and belief, Punxsutawney has committed a pattern of violations which have resulted in the deprivation of other students' rights to personal security, bodily integrity, and Equal Protection.

140.    Punxsutawney's actions in ignoring its duties under federal law, including but not limited to, Title IX, demonstrate an adopted practice, custom, or policy in deliberate indifference to Student's safety.

141.    Punxsutawney's failure to adequately train its employees in the proper reporting and investigative procedures of a sexual harassment or assault complaint, resulted in Student being forced with withdraw and switch school districts, thereby forcing him to choose between his safety or accessing his educational program to which he was entitled to receive.

142.     Student has suffered physical and psychological trauma, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Punxsutawney's violation of his rights under the Fourteenth Amendment.

143.     Parent has also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Punxsutawney together with court costs, attorney's fees, interest and all other relief permitted by the Court.


### SEVENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v. Defendants Punxsutawney Christian School and Tri-County Transportation, Inc.**

144.     All preceding paragraphs are incorporated herein.

145.     At all relevant times, Student, as an enrolled student at Punxsutawney and a rider of the provided school transportation, under the care, custody and/or control of Defendants Punxsutawney and Tri-County.

146.     At all relevant times, Punxsutawney and Tri-County had a preexisting duty of care, either through contract, fiduciary duty, and/or special relationship to ensure Student's safety both during transport to and from school, as well as while on school premises.

147.     A special relationship existed between Punxsutawney, Tri-County and Student as Defendants owed a duty of care to Student to care for his emotional well-being as an enrolled student whose care was entrusted to them during the school day.

148.     Thus, Punxsutawney and Tri-County owed a duty of care to Student to ensure his safety and emotional well-being.

149.     Both Punxsutawney and Tri-County had the ability, authority, and/or capability to protect Student while he rode the van by including but not limited to, removing KR from the van.

150.     By allowing Student to be placed in continued way of harm and a hostile environment by requiring him to leave his educational program, in order to be safe, Defendants Punxsutawney and Tri-County breached the duty of care they owed to Student with respect to his safety and general well-being.

151.     Student has suffered physical and psychological trauma, and severe and permanent psychological damage and emotional distress as a direct and proximate result of Punxsutawney's violation of his rights under the Fourteenth Amendment.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory damages against Defendants Punxsutawney and Tri-County together with court costs, attorney's fees, interest and all other relief permitted by the Court.


### EIGHTH CAUSE OF ACTION
**Negligence**
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v. Defendant Punxsutawney Christian School**

152.     All preceding paragraphs are incorporated herein.

153.     At all relevant times, Student, as an enrolled student at Punxsutawney and a rider of the provided school transportation, was under the care, custody and/or control of Defendant Punxsutawney.

154.     Upon information and belief, Defendant Punxsutawney had a preexisting duty of care, either through contract, fiduciary duty, and/or special relationship to ensure Student's safety both during transport to and from school, as well as while on school premises.

155. A special relationship existed between Punxsutawney and Student as Punxsutawney owed a duty of care to Student to care for his emotional well-being as an enrolled student whose care was entrusted to them during the school day.

156. Thus, Punxsutawney owed a duty of care to Student to ensure his safety and emotional well-being.

157. The alleged injuries and damages to Plaintiffs are the direct and proximate result of Defendant Punxsutawney's negligence, carelessness, and recklessness, generally and in the following particulars:

    a) In failing to ensure the safety and/or well-being of Student;

    b) In failing to maintain policies and/or procedures to ensure the safety and/or well-being of Student;

    c) In failing to hire, train, and/or supervise Defendant's agents, servants, employees, subcontractors, and/or administrators to ensure the safety and/or well-being of Student;

    d) In failing to properly supervise students, where it was foreseeable that Defendant's failure to do so would result in the injuries to someone like Plaintiff;

    e) In failing to have proper safeguards in place to ensure proper supervision of the students whose care was entrusted to the school;

    f) In failing to take proactive measure to ensure the safety and well-being of student, such as Plaintiff;

    g) In failing to comply with local, state, and/or federal laws in reporting Student's sexual assault; and

    h) In failing to take appropriate action, including but not limited to providing supervision during transport, after Student's sexual assault to ensure his future safety and/or well-being while in Defendant's care, custody, and/or control; and

    i) In failing to ensure that after his sexual assault, Student could continue to receive appropriate transportation and access to his education.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Defendant Punxsutawney together with court costs, attorney's fees, interest and all other relief permitted by the Court.

### NINTH CAUSE OF ACTION
**Negligence**
**Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v. Tri-County Transportation, Inc.**

158.	All preceding paragraphs are incorporated herein.

159.	At all relevant times, Student, as a rider of the provided school transportation, was under the care, custody and/or control of Defendant Tri-County.

160.	Upon information and belief, Defendant Tri-County had a preexisting duty of care, either through contract, fiduciary duty, and/or special relationship to ensure Student's safety during transport to and from school.

161.	At all relevant times, while riding the van, Defendant was responsible for the safety of Student.

162.	In allowing KR to continue to ride the van with Student after having actual or constructive knowledge of the sexual harassment and assault, Tri-County appreciated the risk of safety to Student and acted in conscious disregard or indifference to it.

163.	Further, Tri-County appreciated the risk that Student would no longer be able to access his education if KR was permitted to continue to ride the van and still took no action, thus, acting in conscious disregard or indifference to said risk.

164.	The alleged injuries and damages to Plaintiffs are the direct and proximate result of Defendant Tri-County's negligence, carelessness, and recklessness, generally and in the following particulars:

a)	In failing to ensure the safety and/or well-being of Student;

b) In failing to maintain policies and/or procedures to ensure the safety and/or well-being of Student;

c) In failing to hire, train, and/or supervise Defendant's agents, servants, employees, subcontractors, and/or administrators to ensure the safety and/or well-being of Student;

d) In failing to properly supervise students, where it was foreseeable that Defendant's failure to do so would result in the injuries to someone like Plaintiff;

e) In failing to have proper safeguards in place to ensure proper supervision of the students whose care was entrusted to the school;

f) In failing to take proactive measure to ensure the safety and well-being of student, such as Plaintiff;

g) In failing to comply with local, state, and/or federal laws in reporting Student's sexual assault; and

h) In failing to take appropriate action after Student's sexual assault, including but not limited to providing supervision during transport, to ensure his future safety and/or well-being while in Defendant's care, custody, and/or control; and

i) In failing to ensure that after his sexual assault, Student could continue to receive appropriate transportation and access to his education.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory and punitive damages against Defendant Tri-County together with court costs, attorney's fees, interest and all other relief permitted by the Court.

### TENTH CAUSE OF ACTION
### Breach of Contract
### Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge v. Defendant Punxsutawney Christian School

165.    All preceding paragraphs are incorporated herein.

166.    Plaintiffs and Defendant Punxsutawney were parties to a written binding enrollment contract (hereinafter the "Contract").

167. Upon information and belief, Plaintiffs do not have access to the Contract as it was part of the initial enrollment paperwork signed and a copy of the signed agreement was not provided to Parent. As it was part of the initial enrollment paperwork and Student's file, Defendant Punxsutawney would have a copy of the Contract.

168. Upon information and belief, the Contract assured Parent that Punxsutawney would work to meet the mental, physical, and spiritual needs of every student.

169. Upon information and belief, the Contract also addressed disciplinary policies for offenses contrary to Punxsutawney policies and procedures.

170. Defendant Punxsutawney breached the duties imposed by the Contract with Plaintiff by failing to support Student's mental, physical, and/or spiritual needs following the sexual assault.

171. Defendant Punxsutawney also breached the duties imposed by the Contract with Plaintiff by failing to follow, implement, and/or impose disciplinary procedures against Student's sexual assailant in accordance with the policies set forth in the Contract.

172. As a direct and proximate result of Defendant Punxsutawney's breach of the Contract, Student has suffered physical and psychological trauma, and severe and permanent psychological damage and emotional distress.

173. As a direct and proximate result of Defendant Punxsutawney's breach of the Contract, Parent also suffered severe and permanent psychological damage, emotional distress, and compensatory damages due to his relationship as Student's parent.

WHEREFORE, Plaintiffs, by and through their attorneys, demand judgment for compensatory damages against Defendant Punxsutawney together with court costs, attorney's fees, interest and all other relief permitted by the Court.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

/s/ *Alicia M. Simpson*_____
Alicia M. Simpson, Esquire
Attorney for Plaintiffs
PA ID No. 317366
Ruder Law, LLC
429 Forbes Avenue
Suite 450
Pittsburgh, PA 15219
Tele # (412) 281-4959
aliciasimpson@ruderlaw.com