# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MDB, A MINOR, BY MICHAEL J. BRIDGE, HIS GUARDIAN AND MICHAEL J. BRIDGE, | CIVIL DIVISION<br>CASE NO. 2:18-CV-01079 |
| Plaintiffs, | |
| vs. | |
| PURCHASE LINE SCHOOL DISTRICT, PUNXSUTAWNEY CHRISTIAN SCHOOL, AND TRI-COUNTY TRANSPORTATION, INC. | |
| Defendants. | |

## PLAINTIFFS' REPLY BRIEF IN OPPOSITION TO DEFENDANT PURCHASE LINE SCHOOL DISTRICT'S MOTION TO DISMISS

Plaintiffs, MDB, a minor, by Michael J. Bridge, his guardian and Michael J. Bridge, by and through their attorneys, Alicia M. Simpson, Esquire, and Ruder Law LLC, files this Reply Brief in Opposition to Defendant Purchase Line School District's Motion to Dismiss as follows:

### I. STATEMENT OF FACTS

This lawsuit arises out of a sexual assault that took place on a school van operated by Tri-County Transportation, Inc. (hereinafter "Tri-County"). ECF No. 15 ¶ 21. Plaintiff, MDB, was a student at Defendant Punxsutawney Christian School (hereinafter "Punxsutawney") and in accordance with Pennsylvania law, Defendant Purchase Line School District (hereinafter "Purchase Line") contracted with Tri-County to transport Plaintiff to and from school each day. ECF No. 15 ¶¶ 17-20.

On or about May 2016, Plaintiff was sexually assaulted by another student while riding Tri-County's van. ECF No. 15 ¶¶ 22. On or about May 11, 2016, Plaintiff reported the sexual

assault to Plaintiff Michael J. Bridge (hereinafter "Parent) and Parent reported the assault to Defendants Purchase Line and Punxsutawney. ECF No. 15 ¶¶ 26, 27.

After this report, Plaintiff's assailant continued to ride the van and continued to attend Punxsutawney Christian School. ECF No. 15 ¶¶ 30. Given that none of the Defendants were willing to protect Plaintiff's safety from further abuse and emotional needs given his previous assault, Parent made the decision to transport Plaintiff personally in order to avoid him riding the van with his assailant. ECF No. 15 ¶¶ 32.

Ultimately Parent reported the sexual assault to the police and Plaintiff's assailant was criminally charged with indecent assault and indecent exposure. ECF No. 15 ¶¶ 36. Despite these criminal charges and Parent's continued efforts to work with the Defendants in finding a solution that protected Plaintiff and ensured he would not have to endure daily encounters with his assailant, Defendants were unwilling to investigate or support Plaintiff with any reasonable accommodations. ECF No. 15 ¶¶ 37-38. Thus, while Parent's decision to drive Plaintiff ensured that he would not be sexually assaulted again on the van, Plaintiff continued to see his assailant at school, without any type of safety plan in place that would provide supervision to Plaintiff and his assailant. ECF No. 15 ¶¶ 39. The emotional distress of having daily interactions with his sexual abuser resulted in hostile environment, impeding Plaintiff's right to access his education. ECF No. 15 ¶¶ 42.

Towards the end of the school year, Parent requested an aide be placed on the van so that Plaintiff could return to riding the van. ECF No. 15 ¶¶ 44. However, before the beginning of the 2016-2017 school year, Parent was informed by Defendants Purchase Line and Punxsutawney that Purchase Line would only facilitate placing an aide on the bus if Punxsutawney paid for the aide. In response, Punxsutawney told Parent the cost of an aide was not in its budget. ECF No. 15 ¶¶

45. With no option, other than for Plaintiff to return to riding the van with his assailant, Parent made the difficult decision to withdraw Plaintiff from Punxsutawney and enroll him in a different school for the 2016-2017 school year. ECF No. 15 ¶¶ 49. The alternative would have forced Plaintiff into a hostile environment and suffer additional emotional distress. ECF No. 15 ¶¶ 48. The decision for Plaintiff to attend a new school is also financially difficult for Parent due to the fact that Parent will be forced to pay for transportation Plaintiff when he attends ninth through twelfth grade and the increased cost of tuition. ECF No. 15 ¶¶ 50.

Due to Defendant Purchase Line's actions, Parent filed a complaint with OCR, alleging that Defendant Purchase Line violated Plaintiff's rights under Title IX. ECF No. 15 ¶¶ 51. Upon completing its investigation, OCR found that Defendant Purchase Line violated its obligations under Title IX in multiple ways. ECF No. 15 ¶¶ 53-55. As a result of Defendants' actions, Plaintiff has suffered anxiety, depression, emotional distress, and physical manifestations of psychological anguish. ECF No. 15 ¶¶ 57.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a 'plausible' claim for relief, and '[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (quoting Graf v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)).

### III. ARGUMENT

**A. Plaintiffs have sufficiently pled their claim for Title IX violations against Defendant Purchase Line.**

To establish a Title IX claim, Plaintiff must show that (1) he was a student at an educational institution receiving federal funds; (2) he was subjected to harassment based on his sex; (3) the harassment was sufficiently severe or pervasive to create a hostile environment in an educational program or activity; and (4) there is a basis for imputing liability to the institution. Davis v. Monroe County Board of Education, 526 U.S. 629, 648-51 (1999).

The Davis Court also addressed the case of student-on-student harassment, holding that recipients of federal funding may be liable for "subject[ing]" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." Id. at 646-647. Further, the Court held that where "the misconduct occurs during school hours and on school grounds…the misconduct is taking place 'under' an 'operation' of the funding recipient."

In the instant matter, as alleged in Plaintiffs' complaint, Plaintiff was sexually assaulted by another student on the transportation provided by Defendant Purchase Line. After being made aware of Student's sexual assault, Defendant Purchase Line, due to its Title IX Coordinator's inadequate training, took no action to investigate the sexual assault and did not take any action to remedy the hostile environment Plaintiff was subjected to after his sexual assault.

4

At this stage, Plaintiff must merely put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Thus, Plaintiff has more than sufficiently pled facts necessary to support its claim of Defendant's violation of Title IX.

As for the first element, Plaintiff has pled, and it is undisputed, that Plaintiff's home school district was Purchase Line, a federal fund recipient, and in accordance with Pennsylvania state law, Defendant had an obligation to transport him to and from Punxsutawney. Thus, during all times of transportation, Plaintiff was afforded the same rights and protections as all other Purchase Line students.

As for the second element of a Title IX claim, Plaintiff has pled that he was sexually assaulted by another student and was a victim of sexual harassment based on his sex. Specifically, the assailant student touched Plaintiff's penis and exposed himself to Plaintiff. It is indisputable that such behavior was sexual in nature and qualifies as such under a Title IX claim.

With respect to the third element, Defendant's assertion that Plaintiff's sexual assault was not severe or pervasive enough to create a hostile environment is outrageous. After being sexually assaulted, Plaintiff was not provided an option to be protected from his assailant. Defendant did not remove the student assailant from the van, as it has the ability to do per its transportation policies. Further, Defendant declined to provide adult supervision on the van after the assault to allow Plaintiff to be protected from further harm. In fact, Defendant offered no accommodation to Plaintiff whatsoever, other than that the assailant and Plaintiff would sit several seats apart and this would be "monitored" by the van driver. This "accommodation" was not sufficient as this was the same van driver that was oblivious to a sexual assault that took place on the van. Thus, in order to access his legal right to transportation to his school, Plaintiff would have had to be subjected to future sexual abuse due to the Defendant's deliberate indifference. Thus, Plaintiff was left with no

choice but to withdraw and enroll in a new school due to his inability to be free of a hostile environment during his transportation to and from school. As held by the Davis Court, the "most obvious example of student-on-student sexual harassment capable of triggering a damages claim would thus involve the overt, physical deprivation of access to school resources." In the instant matter, Defendant's violations under Title IX deprived Plaintiff his legal right to transportation, thus, physically excluding him from his educational opportunity of attending his school of choice.

Defendant knew or should have known that requiring Plaintiff to ride the same van to school with his sexual assailant would be traumatic, debilitating, and interfere with his ability to receive adequate educational opportunities. For this reason, allowing the student assailant back onto the van with Plaintiff showed deliberate indifference to Plaintiff's sexual assault as it was clearly unreasonable based on the circumstances. Additionally, and at a minimum, Defendant refused to take any reasonable precautions or safety measures proactively to ensure that Plaintiff was not subjected to a hostile environment and able to access his educational program or activity.

Further, Plaintiff was exposed to the aforementioned hostile environment during an "educational program or activity" because at the time of the sexual assault, Defendant provided transportation for Plaintiff to Punxsutawney, in accordance with state law. The District's transportation policy, which includes its rules and disciplinary procedures, applies to all students for whom the District provides transportation, and as such, the District was responsible for ensuring that Plaintiff was not subjected to discrimination based on sex while he was transported.

Finally, with respect to the fourth element, there is certainly a basis for imputing liability to Defendant in this matter. The sexual assault occurred during transportation provided by Defendant Purchase Line, in accordance with state law. With regard to transportation, and in accordance with its policies, Defendant Purchase Line, has the authority to suspend a student from

6

transportation for disciplinary reasons, leaving the student's parent responsible for transportation. Thus, Defendant had control over both Plaintiff and the assailant in the environment where the sexual assault occurred. However, despite Defendant having knowledge of a sexual assault occurring to Plaintiff, and the ability to act and protect Plaintiff from a hostile environment, it did nothing. That is by definition, deliberate indifference.

Many of Defendant's arguments are premature at this stage. In reviewing a Motion to Dismiss, this Honorable Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. Due to this high bar for dismissal, Defendant attempts to distract from Plaintiff's actual burden of proof, attempting to impute blame upon Parent or suggest that at the time of trial, Plaintiff's evidence of an OCR report cannot be admitted under the Federal Rules of Evidence. While these arguments are better suited for a Motion for Summary Judgment, or even a Motion in *limine*, Plaintiff would note that the OCR Report is covered in one of the many exceptions to hearsay and would be admissible pursuant to Federal Rule of Evidence 803(8), as it is a public record in a civil case that contains factual findings from a legally authorized investigation. See Boatright v. Crozer-Keystone Health System, 2015 WL 4506559 (E.D. Pa. July 24, 2015); see also Alexander v. CareSource, 576 F.3d 551, 561-62 (6th Cir. 2009).

Accordingly, for aforementioned reasons, Defendant's Motion to Dismiss Plaintiff's Title IX Claim should be denied.

### B. Plaintiff Has Sufficiently Pled His Claim Under 42 U.S.C. § 1983 for Injury to Bodily Integrity as a Result of State Created Harm against Defendant

In Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006) the Third Circuit has ruled that, he must prove:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

7

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a state danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Through the allegations in the Complaint, Plaintiff has sufficiently pled that the harm caused was foreseeable and fairly directly. After learning that Plaintiff was sexually assaulted on the school van, Defendant did not do or offer to do the following: investigate the assault; remove the assailant from the bus; transport Plaintiff separately from his assailant; or provide an aide on the bus, at its expense, to ensure that Plaintiff would not be subjected to a hostile environment. Without these reasonable actions taking place, the District knew or should have known that Plaintiff would be unable to continue to ride the van to school and in turn, continue to attend school.

Thus, it was foreseeable that without ensuring his safety, Plaintiff was denied the ability to continue to ride the van and consequently, unable to continue to attend school. This deprivation of Plaintiff's right to attend school was a direct result of Defendant's actions and/or inactions.

Plaintiff alleges several facts in his Complaint which support the contention that Defendant's actions would "shock the conscience" of a reasonable person. After enduring a sexual assault, Defendant provided no option to Parent other than to have Plaintiff continue to ride the van to and from school with his assailant. Thus, despite its authority to take action in any number of ways, (e.g. by removing the assailant from the van; placing an aide on the van; or placing the assailant on a different van) Defendant overtly ignored Plaintiff's safety and needs and tried to place the blame on Defendant Punxsutawney. Defendant Purchase Line knew it was responsible for Plaintiff's transportation, under state law, and tried to push responsibility of Plaintiff's safety

during transport onto Defendant Punxsutawney. Defendant's willingness to place Plaintiff back into a situation where he faced further sexual abuse and its lack of accountability for its own responsibilities is conduct a jury could certainly find shocking to the conscience.

With respect to the third element, a relationship existed between the state and the Plaintiff as Plaintiff's home district is Purchase Line and Defendant was legally responsibility for Plaintiff's transport to and from school. Further, Defendant legally contracted with Defendant Tri-County to provide transportation for Plaintiff, thereby acknowledging its responsibility and duty. Plaintiff was both a foreseeable victim of the Defendant's acts to refuse to allow Plaintiff to safely access his educational programming and also a member of a discrete class (students the Defendant was legally obligated to transport) who was subjected to the potential harm brought about by Defendant's actions of failing to investigate and take action to protect its students from recurring sexual assault and allowing them continued access to education.

Finally, Plaintiff has sufficiently pled facts to support the fourth criteria to support its claim. As pled by Plaintiff, Defendant Purchase Line ignored Student's safety, and instead told Parent that it was Defendant Punxsutawney's responsibility to act. ECF No. 15 ¶ 102. It is hard to imagine that Defendant Purchase Line would have acted with the same disregard if Plaintiff had been an enrolled student in Purchase Line School District. Instead, because Plaintiff attended school at Defendant Punxsutawney, Defendant Purchase Line capitalized on the opportunity to shirk all responsibility from itself onto Defendant Punxsutawney. Accordingly, it is obvious from Defendant Purchase Line's actions that it had an adopted practice, custom or policy of being deliberately indifference to the health, safety and welfare of students that it transported that were not enrolled in the Purchase Line and/or sexual assault victims.

### C. Plaintiff has Sufficiently Pled a Claim under 42 U.S.C. § 1983 for Monell Liability.

"A municipality may be held liable under § 1983 where a violation of rights was caused by the municipality's policy or custom." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). "Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Id. Finally, "the deficiency in training must have caused the constitutional violation." Id. In certain situations, a pattern of constitutional violations is not necessary, such as when the need for training is so obvious that the failure to do so can be seen as deliberate indifference to constitutional rights. Id. at 223.

As pled in the Complaint, OCR found that Defendant's Title IX coordinator, former Superintendent, Mr. Bradley, was not adequately trained in Title IX procedures and how to respond to the reports of sexual harassment, including maintaining adequate records of Defendant's response. ECF No. 15 ¶ 55. It is clear Defendant knew of its requirement to have a designated Title IX Coordinator, yet did not bother to ensure that its Title IX Coordinator was adequately trained. Thus, Defendant cannot claim it was unaware of its obligation under Title IX and the importance of providing training to its *designated* Title IX Coordinator. Without this training, Plaintiff's sexual assault was never investigated, despite it occurring during school-sponsored transport by Defendant and Title IX requiring it. Moreover, without proper training, Plaintiff was not offered any reasonable accommodations to ensure his continued transportation and access to school, and accordingly was subjected to a hostile environment. Defendant's failure to train its Title IX coordinator, despite its knowledge of its obligations, amounts to deliberate indifference. Plaintiff has sufficiently pled enough to support this contention as well as the contention that Plaintiff's resultant injuries are closely related to Defendant's deliberate indifference. As pled,

Plaintiff was victimized a second time, after being forced to leave his friends and school due to Defendant's failure to take appropriate action under Title IX. ECF No. 15 ¶ 57.

### D. Plaintiff Did Not Plead State Claims Against Defendant Purchase Line

Despite Defendant's arguments, Plaintiff did not plead Negligent Infliction of Emotional Distress (Seventh Cause of Action); Negligence (Eighth and Ninth Causes of Action); and/or Breach of Contract (Tenth Cause of Action) against Defendant Purchase Line. Accordingly, as Defendant is not a party to any of the aforementioned claims, Plaintiff requests that this Honorable Court disregard Defendant's Motion to Dismiss with respect to Plaintiff's Seventh, Eighth, Ninth, and Tenth Causes of Action.

### E. Punitive Damages

At this time, Plaintiff withdraws his claims for punitive damages against Defendant Purchase Line, but requests that this Honorable Court allow Plaintiff's claims for punitive damages to be renewed at the time of trial, if deemed appropriate.

## IV. CONCLUSION

For the foregoing reasons, Defendant Purchase Line's Motion to Dismiss should be denied in its entirety.

In the alternative, if this Court determines that Plaintiffs have not sufficiently pled any of their claims, Plaintiffs respectfully request that any dismissed claims be dismissed without prejudice and Plaintiffs be afforded leave to amend their Complaint to include additional allegations.

Respectfully submitted,

Ruder Law LLC

BY: */s/ Alicia M. Simpson*  
Alicia M. Simpson, Esquire  
PA ID No. 317366  
429 Forbes Avenue, Suite 450  
Pittsburgh, PA 15219  
(412) 281-4959  
aliciasimpson@ruderlaw.com  
***Counsel for Plaintiffs***